IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| AMERICAN PAPER OPTICS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:23-cv-02107-JPM-atc |
| v. | ) ) | |
| HOWARD ALAN ZIMMERMAN d/b/a LUNAWEB, and ENOM, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING PLAINTIFF'S THIRD MOTION FOR DEFAULT JUDGMENT AS TO THE SECOND CAUSE OF ACTION, AND OF DISMISSAL AS TO OTHER CAUSES OF ACTION**

Before the Court is Plaintiff American Paper Optics, LLC's ("APO") Third Motion for Default Judgment, filed on November 9, 2023 (ECF No. 29). On June 15, 2023, the Court denied APO's first Motion for Default Judgment (ECF Nos. 21-22). On October 23, 2023, it denied APO's Renewed Motion for Default Judgment (ECF No. 25) based on failure to justify default judgment on four of the five causes of action, and on the remaining cause of action as to certain domain names in dispute. (ECF No. 28 at PageID 89, 92-3.)

This motion narrows the scope of the Complaint to one cause of action, seeks injunctive relief rather than damages, and only seeks relief as to the eleven domain names for which this Court has already found the claim viable. (ECF No. 28 at PageID 90-93; ECF No. 29 at PageID 98.) Therefore, for the following reasons, the Motion is **GRANTED IN PART**.

I.   BACKGROUND

  A.   Factual Background

The following facts from APO's Complaint are deemed admitted due to Defendants' default as a result of failing to answer the Complaint.  (ECF No. 20); See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110-11 (6th Cir. 1995).

On March 1, 2023, APO, a manufacturer and retailer of three-dimensional or "3D" eclipse-safe, holographic, and polarized optic lenses and glasses, filed it Complaint, alleging that Howard Alan Zimmerman doing business as Lunaweb ("Zimmerman"), and Enom, LLC ("Enom") have infringed on and continue to infringe on several of APO's trademarks.  (ECF No. 1.)

APO further alleged that it has registered with the USPTO several trademarks relevant to this case, including: The Eclipser, for eclipse glasses; ChromaDepth, for optical lenses and eyeglasses for providing three-dimensional images; C3D, for optical lenses and eyeglasses for providing three-dimensional images; and Holospex, for novelty items in the nature of eyeglasses with a diffraction effect.  (Id. at PageID 6.)  APO also alleges that it has used the following apparently unregistered trademarks for varying amounts of time: 3dglassesonline.com, since March 2003; eclipseglasses.com, since April; 2015; the3dmarket.com, since January 2005; and holidayspecs.com, since January 2007.  (Id. at PageID 3-4.)  APO further alleges that each mark is famous and distinctive in the specialty glasses industry.  (Id. at PageID 5).  APO has built up extensive goodwill on each mark and used them on products, websites, and promotional materials.  (Id.).

APO alleges that, beginning in 2005, it hired Zimmerman to purchase internet domain names at APO's direction, register domain names to APO, and re-register the domain names when appropriate.  (Id. at PageID 6-7.)  The full list of these domain names includes:

3dglassesonline.com; eclipseglasses.com; the3dmarket.com; holidayspecs.com; chromatek.com; 20for24.com; 2024dallaseclipse.com; 2024clevlandeclipse.com; 2024littlerockeclipse.com; 2024indianapoliseclipse.com; 2024buffaloeclipse.com; 2024montrealeclipse.com; 2024eclipsesafety.com; eclipseglassessafety.com; 3dglassesonline.net; solarsnapeclipseapp.com; solarsnapapp.com; chromadepth3d.com; 3dglassesonline.org; 3d-market.com; americanpaperoptics.com; safeeclipseglasses.com; truevue3d.com; customeclipseglasses.com; eclipseguys.com; safesolareclipseglasses.com; plastic3d.com. (Id. at PageID 4-5.) Zimmerman thus registered twenty-seven domain names at APO's direction. Four of these domain names—3dglassesonline.com, eclipseglasses.com, the 3dmarket.com, and holidayspecs.com—are identical to APO's trademarks. (Id. at PageID 3-4.) The other domain names directly link users to one of the four websites located at domain names identical to APO's trademarks, or to chromatek.com. (Id. at PageID 5.)

In or about April 2022, APO ended its business relationship with Zimmerman and hired World Spice, a technology company that offers domain name registration services, to take over the domain name hosting that Zimmerman previously provided for APO. (Id. at PageID 7.) APO learned from World Spice that Zimmerman had secretly registered APO's domain names in his own name with a domain name registrar Enom. (Id. at PageID 8.) As a result of Zimmerman's registration and use of the domain names, APO cannot access, transfer, recover, or assert any control over the websites located at the domain names. (Ibid.) Zimmerman stated that he set up control in this manner because of a "billing issue," of which Zimmerman had never informed APO beforehand. (Ibid.) APO asserts this is an "attempt to extort Plaintiff by holding its domain names hostage." (Ibid.)

Zimmerman has failed to properly maintain the domain names at issue in several ways, including allowing the registration for the domain name holidayspecs.com to expire and causing the website located at this domain name to be inoperable until APO convinced Enom to perform an "emergency renewal" at APO's cost. (Id. at PageID 9.) Zimmerman also allowed the registration for the domain name eclipseglasses.com to expire, causing the website located at the domain name to go down and costing APO revenue it would otherwise have gained from customer orders placed at this website. (Ibid.)

These websites account for a large portion of APO's business. (Id. at PageID 8.) Zimmerman has not responded to APO's attempts to contact him. (Ibid.) APO asserts on information and belief that, *inter alia*, Zimmerman intends to transfer, sell, or otherwise assign the domain names for financial gain without using them for any bona fide offering of goods or services. (Id. at PageID 11.)

APO's Complaint includes five claims: (1) unfair competition, in violation of § 43(a) of the Lanham Act; (2) cybersquatting, in violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"); (3) trademark dilution, in violation of § 43(c) of the Lanham Act; (4) common law unfair competition; and (5) common law conversion and trespass to chattels. (Id. at PageID 10-4.) APO asserts that it is entitled to monetary damages, injunctive relief, attorneys' fees and costs, and prejudgment and post-judgment interest. (Id. at PageID 14-6.)

**B.     Procedural Background**

On June 15, 2023, the Court denied APO's first Motion for Default Judgment (ECF Nos. 21-22). On July 28, 2023, APO filed a Renewed Motion for Default Judgment. (ECF No. 25.)

On October 23, 2023, this Court denied the renewed motion. (ECF No. 28.) The Court determined that based on APO's arguments, the motion in effect only sought default judgment as

to the cause of action for cybersquatting. (Id. at PageID 89.) As to the merits of this claim, the Court held that the domain names 3dglassesonline.com, 3dglassesonline.net, 3dglassesonline.org, eclipseglasses.com, the3dmarket.com, and holidayspecs.com (collectively "Identical URLs") are identical to the trademarks asserted in the Complaint. (Id. at PageID 90.) The Court further held that the domain names eclipseglassessafety.com, 3d-market.com, safeeclipseglasses.com, customeclipseglasses.com, and safesolareclipseglasses.com (collectively "Similar URLs") are confusingly similar to the claimed trademarks. (Id. at PageID 91.) The remaining sixteen domain names, however, were too dissimilar to the trademarks to serve as the basis for a claim under the ACPA. (Id.)

The Court denied the motion for default judgment in full, declining to "enter default judgment in a piecemeal fashion as to some domain names but not others." (Id. at PageID 93.) The Court wrote in its order that if APO filed a subsequent motion for default judgment, APO should explain why it was entitled to default judgment on the claim for cybersquatting as to the sixteen outstanding domain names. (Id.) Alternatively, APO could choose not to pursue default judgment as to some domain names and articulate the exact relief it seeks. (Id.) As to the other four causes of action, the Court pointed out that failure to address them in any renewed motion could result in their dismissal. (Id.)

## II.   LEGAL STANDARD

If a defendant fails to plead or otherwise defend, and that failure is shown, the clerk must enter a default. Fed. R. Civ. P. 55(a). Following entry of default, if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—with an affidavit showing the amount due—must enter judgment for that amount and costs. Id. at 55(b)(1). In all

other cases, the plaintiff must seek a default judgment from the court by motion. Id. at 55(b)(2). The court assesses the appropriate way to determine the judgment. Id.

Where the court is to determine damages, it considers the well-plead factual allegations in the complaint regarding liability as admitted, but damages must still be shown. Antoine, 66 F.3d at 110-11. Specifically, although the factual allegations in the complaint are admitted, the Court must still determine "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). The standard to be applied is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n. 41 (11th Cir.1997)). Default judgment should be denied where a complaint fails to state a claim. See Harrison v. Bailey, 107 F.3d 870 (6th Cir. 1997) (unpublished table decision) ("Default judgments would not have been proper due to the failure to state a claim against these defendants.") (quoting Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir.1992)). It is a plaintiff's burden to show that his well-plead factual allegations admitted by a defaulting defendant establishes liability for each cause of action asserted for which the plaintiff seeks defaults judgment. Nat'l Auto Grp., Inc. v. Van Devere, Inc., 5:20-cv-2543, 2021 WL 1857143 at *4 (N.D. Ohio May 10, 2021) (collecting cases in support of this proposition).

## III. ANALYSIS

As discussed above, this Court previously warned APO that failure to argue for default judgement as to four of the five claims could result in their dismissal. (See supra I.B; ECF No. 28 at PageID 93.) APO now consents to dismissal of these four claims, along with any claim for

monetary damages.  (ECF No. 29-1 at PageID 99.)  The only outstanding issue is whether this Court should grant the requested injunctive relief based on a claim for cybersquatting under the ACPA.

      A.      **Merits**

"Cybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners . . . This prevents the use of the domain name by the mark owners, who not infrequently have been willing to pay 'ransom' in order to get 'their names' back." Sporty's Farm L.L.C v. Sportsman's Market, Inc., 202 F.3d 489, 493 (2d Cir. 2000) (citations omitted).  A trademark owner bringing a cybersquatting claim must prove: "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004) (citing Ford Motor Co. v. Catalanotte, 342 F.3d 543, 546 (6th Cir. 2003).

As to the first element, the Complaint asserts that APO has registered trademarks for The Eclipser, ChromaDepth, C3D, and Holospex.  (ECF No. 1 at PageID 6.)  APO also alleges that it has used the following seemingly unregistered trademarks for varying amounts of time: 3dglassesonline.com, since March 2003; eclipseglasses.com, since April; 2015; the3dmarket.com, since January 2005; and holidayspecs.com, since January 2007.  (Id. at PageID 3-4.)  Registration of a mark, however, is not mandatory.  Iancu v. Brunetti, 588 U.S. 388, 391 (2019).  The owner of an unregistered mark may still use it in commerce and enforce it against infringers.  Id. (citing Matal v. Tam, 582 U. S. 218, 225 (2017)).

As to the second element, the Complaint asserts that APO has built up extensive goodwill on each mark. (ECF No. 1 at PageID 5.) APO has used its marks on products, websites, and promotional materials. (Id.). This supports the assertion that the trademarks are famous and distinctive in the specialty glasses industry. (Id.)

As to the third element, this Court previously held that only eleven domain names, six Identical URLs and five Similar URLs, were similar enough to the asserted trademarks. (See supra I.B; ECF No. 28 at PageID 90-1.) APO now consents to dismissal of the cybersquatting claim as to all other domain names. (ECF No. 29-1 at PageID 99.)

As to the fourth and fifth elements, the Complaint alleges that APO hired Zimmerman to purchase the domain names at APO's directions, register domain names to APO, and re-register the domain names when appropriate. (ECF No. 1 at PageID 6-7.) After APO hired World Spice to replace Zimmerman, it learned that Zimmerman had secretly registered APO's domain names in his own name with Enom. (Id. at PageID 7-8.) This meant APO cannot access, transfer, recover, or assert any control over the websites located at the domain names. (Id. at PageID 8.) Zimmerman has resisted efforts to return the domain names to APO. Zimmerman has not responded to APO's efforts to contact him for their return. (Ibid.) APO has concluded that Zimmerman seeks to either extort money from APO for the domain names' return, or to sell them for financial gain without using them for any bona fide offering of goods or services. (Id. at PageID 8, 11.)

APO has pled sufficient facts to demonstrate that Defendants' retention of the Identical and Similar URLs constitutes cybersquatting.

**B.      Injunctive Relief**

APO seeks an injunction (1) compelling Zimmerman and those acting on his behalf to transfer the Identical and Similar URLs to APO's ownership, (2) enjoining Zimmerman and those acting on his behalf from altering any contents on those websites, (3) enjoining Zimmerman and those acting on his behalf from transferring ownership and control of those websites to anyone but APO, and (4) compelling Enom to effectuate such transfer to APO.  (ECF No. 29 at PageID 95.)

A plaintiff seeking a permanent injunction under Fed R. Civ. P. 65 must show (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) it is in the public's interest to issue the injunction.  Johnson v. Synovus Bank, No. 214CV02950-STA-dkv, 2016 WL 1268311, at *3 (W.D. Tenn. Mar. 31, 2016).

Courts vested with jurisdiction of civil actions under the Lanham Act "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent… a violation under subsection (a), (c), or (d) of" 15 U.S.C. section 1125. 15 U.S.C. § 1116(a).  This includes an action based on a person's use and registration of a domain name that is identical or confusingly similar to a famous or distinctive mark, with a bad faith intent to profit from that mark.  15 U.S.C. § 1125(d)(1)(A).  In any such action, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.  15 U.S.C. § 1125(d)(1)(C).

A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding such a violation.  15 U.S.C. § 1116(a).  Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the

9

court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied. Id.

Although APO requests relief in four parts, they all effectively serve the same purpose. APO seeks to reclaim from Zimmerman eleven domain websites that use variations of APO's trademark. As discussed above, APO has pled sufficient facts to find that Zimmerman plans to profit from those websites, either by extorting APO or selling the websites without using them for any bona fide offering of goods or services. (Id. at PageID 8, 11.) APO enjoys a rebuttable presumption of irreparable harm.

As to the balance of equities between the parties, Zimmerman suffers no cognizable harm from having to relinquish ownership of websites that he never had the right to own. As to the public interest, APO argues that protecting intellectual property owners from cybercriminals by mandating the return of infringing domain names furthers the public interest. (ECF No. 29-1 at PageID 99.) Although the value of this interest is unclear, without a response brief, Zimmerman does not present a public interest that merits denying the requested injunctive relief.

As to Enom, the Complaint admittedly only asserts that Zimmerman secretly registered the disputed domain names with it. (ECF No. 1 at PageID 8.) However, APO asserts that it only sought an order against Enom because Enom asked for such an order to establish that APO, not Zimmerman, is the rightful owner of the domain names. (ECF No. 39-1 at PageID 99.) The requested injunction can issue under these circumstances.

APO asks that the Court require compliance with the injunction within ten days of the entry of the order. (ECF No. 29 at PageID 95.) The cited statutes only authorize the Court to require a defendant to file a report of compliance within thirty days or more. 15 U.S.C. § 1116(a). APO does not cite authority showing this Court can reduce that period further.

## IV. CONCLUSION

The Third Motion for Default Judgment is **GRANTED IN PART**. As to the claim for cybersquatting, Defendant Zimmerman is ordered to, within thirty (30) days of entry of this order, take all necessary steps to transfer to APO ownership and control of the Identical and Similar URLs. Defendant Enom is ordered to effectuate this transfer within the same timeframe. Defendant Zimmerman is further ordered to neither alter any contents of these domain names, nor transfer ownership and control to anyone other than APO.

Pursuant to APO's agreement (ECF No. 29-1 at 98), all other claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 20th day of June, 2024.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE